UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                              )
D&S CONSULTING, INC. (DSCI),  )
                              )
            Plaintiff,        )
                              )
       v.                     )  Civil Action No. 17-0787 (EGS)
                              )
KINGDOM OF SAUDI ARABIA,      )
                              )
            Defendant.        )
_____)
```

**MEMORANDUM OPINION**

On April 11, 2017, plaintiff D&S Consulting, Inc., ("DSCI") filed a complaint in the Superior Court of the District of Columbia against defendant the Kingdom of Saudi Arabia ("KSA") for, *inter alia*, breach of contract and unjust enrichment. KSA timely removed the action to this Court. Pending before the Court is KSA's motion to dismiss the complaint on the ground of *forum non conveniens*. Upon careful consideration of KSA's motion, the response and reply thereto, the applicable law, and for the reasons set forth below, the Court **GRANTS** KSA's motion to dismiss.

## I. Background

This case arises out of a contractual dispute between DSCI and KSA. DSCI and KSA entered into a contract that provided for performance between August 2013 and April 2015. Compl., ECF No. 1-1 ¶ 4. The contract was entered into in Saudi Arabia. *Id*. ¶ 3. DSCI performed under the contract and KSA paid DSCI on a monthly basis. *Id*. ¶ 4. At the same time DSCI was performing under its contract with KSA, DSCI was awarded another contract, the details of which are not relevant to this case. *Id.* ¶ 5.

DSCI breached the other contract and was terminated for failure to timely post a bond required by that contract. *Id.* Because of that termination, DSCI became insolvent and surrendered control of its assets to Bank of America, its secured creditor. *Id.* ¶ 6. Bank of America appointed a restructuring officer to wrap up DSCI's affairs and resolve its outstanding debts and receivables. *Id.* In reviewing its outstanding debts, DSCI discovered two invoices for work completed on the KSA contract that had not been previously invoiced or collected. *Id.* ¶ 7. Accordingly, DSCI submitted invoices for this work, but KSA has refused to pay. *Id.* ¶ 8, 9. DSCI filed suit against KSA to, *inter alia*, recoup the funds it alleges KSA owed to it.

Several provisions of the contract[1] between DSCI and KSA are relevant to this motion to dismiss. The contract provides that "its interpretation, performance and enforcement shall be governed and construed by and in accordance with the applicable laws of the Kingdom of Saudi Arabia." Mot. to Dismiss, Attach., ECF No. 10-1 at 25.[2] Additionally, "Arabic language shall be the approved language in interpreting and executing [the] contract." *Id.* at 45. Although the parties were permitted to use a "foreign language in writing the contract . . . [i]n cases of discrepancy between the Arabic text and the foreign language's text, the Arabic text shall supersede." *Id.* The contract also provides that "[t]he consultant and its employees shall commit to all regulation, laws and customs prevailing in [Saudi Arabia]

---

[1] DSCI referred to this contract, but did not attach the contract to its Complaint. *See generally* Compl., ECF No. 1-1. KSA filed both a redacted, ECF No. 10-1, and an unredacted, ECF No. 19-1, version of the contract. The unredacted version was filed under seal. Because the provisions at issue are not redacted, the Court cites to the redacted version of the contract. ECF No. 10-1. The contract was referenced in DSCI's complaint and DSCI's breach of contract claim necessarily relies upon the language of the contract; therefore, the Court considers the contract without converting the motion to dismiss to one for summary judgment. *See Marshall v. Honeywell Tech. Solutions, Inc.*, 536 F. Supp. 2d 59, 65-66 (D.D.C. 2008) ("[W]here a document is referred to in the complaint and is central to the plaintiff's claim, such a document attached to the motion papers may be considered without converting the motion to one for summary judgment.") (citation and internal quotation marks omitted).

[2] When citing electronic filings throughout this opinion, the Court cites to the ECF header page number, not the original page number of the filed document.

3

including labor law, residence and other related laws." *Id.* at 67.

The contract designates Saudi Arabia as the place where the contract was to be performed. *Id.* at 75-76. The contract required DSCI to keep all "books and all accounts and documents related to this cont[r]act locally in Arabic . . . certified by a chartered accountant licensed to work in [Saudi Arabia]." *Id.* at 46. Saudi Arabian currency was the form of payment under the contract. *Id.* at 23. Finally, the forum-selection clause provides that "[t]he grievance council shall be assigned for settlement of any disputes or claims arising from the execution of this cont[r]act, or related to this contract, or resulting from its dissolution." *Id.* at 46. Although not defined in the contract, the "grievance council" refers to the Board of Grievances in Saudi Arabia, an administrative court, which has jurisdiction over government contract claims brought against the Kingdom of Saudi Arabia. Mot. to Dismiss, ECF No. 10 at 13.

On September 20, 2017, KSA moved to dismiss DSCI's complaint on the ground of *forum non conveniens*. DSCI filed its opposition on November 13, 2017, and KSA filed its reply on December 13, 2017. KSA's motion to dismiss is now ripe for consideration by the Court.

## II. Legal Standard

Whether to dismiss a case on the ground of *forum non conveniens* "is committed to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981). Because the doctrine applies in federal courts "only in cases where the alternative forum is abroad," the appropriate remedy is dismissal rather than transfer. S*inochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007) (citation and internal quotation marks omitted); *see also Atl. Marine Constr. Co. v. U.S. Dist. Ct. for the W. Dist. of Tex.*, 571 U.S. 49, 66 n.8 (2013) ("Unlike a § 1404(a) motion [to transfer], a successful motion under *forum non conveniens* requires dismissal of the case.") (citation omitted).

When considering a motion to dismiss on the ground of *forum non conveniens*, the Court ordinarily must first determine whether the proposed alternative forum is adequate. *Friends for all Children, Inc. v. Lockheed Aircraft Corp.*, 717 F.2d 602, 607 (D.C. Cir. 1983) (citing *Piper Aircraft Co.*, 454 U.S. at 354 n.22). If there is an adequate alternative forum, the Court then "must balance the private interests of the litigants in keeping the case in the District of Columbia or dismissing it in favor of the foreign court, and the interests of the public and the courts of this district in keeping the case here." *Irwin v.*

*World Wide Fund, Inc.*, 448 F. Supp. 2d 29, 32–33 (D.D.C. 2006) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)).

That calculus of factors changes, however, when the parties have agreed to a mandatory forum-selection clause because a forum-selection clause "represents the parties' agreement as to the most proper forum." *Atl. Marine Constr.*, 571 U.S. at 63 (citation omitted). When a contract contains a valid forum-selection clause, the parties' agreement regarding the proper forum for resolving disputes should be "given controlling weight in all but the most exceptional cases." *Id.* (citation and internal quotation marks omitted).

The Supreme Court has articulated a two-step analysis for addressing a defendant's *forum non conveniens* motion based on a forum-selection clause. *See id.* at 63–64. The first question is validity of the forum-selection clause. *See id.* at 63 & n.5. Forum-selection clauses are presumptively valid and enforceable unless the party opposing enforcement meets a heavy burden of proof of showing that the clause is "the product of fraud or that its enforcement would contravene a strong public policy of the forum in which suit is brought." *Marra v. Papandreou*, 216 F.3d 1119, 1124 (D.C. Cir. 2000) (internal citation omitted).

If the forum-selection clause is valid, the second step of the analysis is to consider whether public interest factors

"overwhelmingly disfavor" dismissal.[3] *Atl. Marine Constr.*, 571 U.S. at 67. Such factors include: "(1) administrative difficulties caused by foreign litigation congesting local court dockets; (2) local interest in having localized controversies decided at home; (3) imposing jury duty on residents of a jurisdiction having little relation to the case; and (4) avoiding unnecessary problems in choice-of-law and the application of foreign law." *Irwin*, 448 F. Supp. 2d at 35 (citing *Gilbert*, 330 U.S. at 508–09). Public interest factors, however, will rarely defeat a *forum non conveniens* motion predicated on a valid forum-selection clause because "[i]n all but the most unusual cases, . . . the interest of justice is served by holding parties to their bargain." *Atl. Marine Constr.*, 571 U.S. at 66 (internal quotation marks omitted). The Court addresses each issue in turn.

---

[3] DSCI's arguments focus on the difficulties in litigating this case in Saudi Arabia. *See, e.g.*, Pl.'s Supp. Opp'n, ECF No. 15. This Court, however, may not take into account these private interest factors when there is a valid forum-selection clause. *Atl. Marine Constr.*, 571 U.S. at 64 (a party waives the right to challenge a contractually agreed upon forum as inconvenient because any inconvenience "was clearly foreseeable at the time of contracting.") (citation and internal quotation marks omitted).

## III. Discussion

### A. The forum-selection clause is mandatory

In opposing the motion to dismiss, DSCI does not contend that the forum-selection clause is invalid or unenforceable, but rather argues that: (1) the forum-selection clause is permissive and therefore it is not prohibited from bringing its claims in this Court; and (2) the Board of Grievances is not an adequate forum to resolve this dispute. Pl.'s Opp'n, ECF No. 13 at 1–5.

As stated above, the forum-selection clause provides: "[t]he grievance council shall be assigned for settlement of any disputes or claims arising from the execution of this cont[r]act, or related to this contract, or resulting from its dissolution." Mot. to Dismiss, Attach., ECF No. 10-1 at 46. DSCI argues that the provision is permissive, rather than mandatory, because it does not contain language that excludes all other forums. Pl.'s Opp'n, ECF No. 13 at 1–3. For this proposition, DSCI relies on *Stone & Webster, Inc. v. Georgia Power Co.*, 779 F.3d 614 (D.C. Cir. 2015). In *Stone*, the Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") affirmed the district court's dismissal of a suit in favor of a complaint filed in the federal district court for the Southern District of Georgia. *Id.* at 615. The forum-selection clause in that case stated: "[The parties] agree to the non-exclusive jurisdiction

8

of the United States District Court for the District of Columbia for any legal proceedings." *Id.* at 615–16. Accordingly, the D.C. Circuit found no error in the district court's finding that the forum-selection clause was permissive or in the district court's dismissal of the District of Columbia action.

The forum-selection clause in DSCI's contract with KSA, however, is distinguishable from the provision at issue in *Stone*. Specifically, the provision in *Stone* explicitly stated that the United States District Court for the District of Columbia would be the "non-exclusive jurisdiction" for any disputes. *Stone*, 779 F.3d at 615–16. In contrast, the forum-selection clause here provides that the "grievance council **shall** be assigned for settlement of any disputes or claims arising from the execution of this [contract]." Mot. to Dismiss, Attach., ECF No. 10-1 at 46. (emphasis added). In *Stone,* the parties made it clear that the District of Columbia was one, but not the only, option. *Stone*, 779 F.3d at 615-616. Here, there is no comparable language in the forum-selection clause to support DSCI's claim that the Board of Grievances would have non-exclusive jurisdiction over contract-related claims.

DSCI's argument that the forum-selection clause in the contract is permissible because it does not explicitly exclude other forums also fails because there is no such requirement in this Circuit. In *Marra v. Papandreou*, the D.C. Circuit

9

characterized as mandatory a nearly identical forum-selection clause and dismissed the case in favor of adjudication in Greece. 216 F.3d 1119, 1120–21 (D.C. Cir. 2000). The clause at issue in *Marra* stated, any "dispute or disagreement . . . arising from the application of this license, the interpretation or performance of its terms . . . and in general any matter that may occur concerning a license, shall be settled by the Greek courts." *Id.* Notably, the D.C. Circuit did not require that the contractual language designate Greece as the exclusive forum. *Id.* at 1124; *see also Glycobiosciences, Inc. v. Innocutis Holdings, LLC*, 189 F. Supp. 3d 61, 71 (D.D.C 2016) (rejecting the argument that a forum-selection clause should contain magic words like "exclusive," "solely," or "only" for the clause to be mandatory). The D.C. Circuit concluded that because of the broad language in the clause, it was clear that the clause required the plaintiff to file her suit in Greece. *Marra*, 216 F.3d at 1124. The same result follows in this case since the forum-selection clause is just as broad as the clause at issue in *Marra*. *See* Mot. to Dismiss, Attach., ECF No. 10-1 at 46. (stating the grievance council shall be assigned "any disputes or claims" arising from, related to, or resulting from, the execution or dissolution of the contract).

DSCI's argument that a forum-selection clause is permissive because it only says that disputes "shall be assigned" to the

10

grievance council without designating the council as the sole forum is undermined, if not totally foreclosed, by Supreme Court precedent. *See M/S Breman v. Zapata Off-Shore Co.*, 407 U.S. 1 (1972). In *Breman*, the Supreme Court held that a forum-selection clause which stated "[any] dispute arising must be treated before the London Court of Justice" was "clearly mandatory and all-encompassing." *Id.* at 20. The same holds true in this case: because the forum-selection clause is broad and "all-encompassing," and clearly assigns the grievance council as the settler of "any disputes or claims arising from the execution of [the contract]," it is clearly mandatory. DSCI's arguments to the contrary are unpersuasive.[4]

---

[4] Although the parties address whether the Board of Grievances is an adequate forum, the Court need not reach this issue because the forum-selection clause is mandatory. *See Atl. Marine Constr.*, 571 U.S. at 64. ("As a consequence [of a mandatory forum-selection clause], a district court may consider arguments about public-interest factors *only*.") (emphasis added). In *Atlantic Marine Construction*, the Supreme Court analyzed a forum-selection clause in the context of a motion to transfer, however, the Court made it clear that "the same standards should apply to motions to dismiss for *forum non conveniens* in cases involving valid forum-selection clauses pointing to . . . foreign forums." *Id.* at 66 n.8; *see also Billard v. Angrick*, 220 F. Supp. 3d 132, 137 (D.D.C. 2016) (Howell, C.J.) (explaining *forum non conveniens* analysis based on forum-selection clause). The Court notes that if it could reach the issue, the Court would find that the Board would meet the adequacy standard. Saudi Arabia is an adequate alternative forum because DSCI and Saudi Arabia are amenable to process and clearly within the

**B. The public interest factors favor dismissal**

Once a court determines a forum-selection clause is valid and enforceable, the second step in the inquiry is to determine whether the public interest factors warrant dismissal. *Atl. Marine Constr.*, 571 U.S. at 67. The public interest factors considered in a *forum non conveniens* analysis include: "(1) administrative difficulties caused by foreign litigation congesting local court dockets; (2) local interest in having localized controversies decided at home; (3) imposing jury duty on residents of a jurisdiction having little relation to the case; and (4) avoiding unnecessary problems in choice-of-law and the application of foreign law." *Irwin v. World Wide Fund, Inc.*, 448 F. Supp. 2d 29, 35 (D.D.C. 2006) (citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947)). Public interest factors, however, will rarely defeat a *forum non conveniens* motion predicated on a valid forum-selection clause because "[i]n all but the most unusual cases, . . . the interest of justice is served by holding parties to their bargain." *Atl. Marine Constr.*, 571 U.S. at 66. (internal quotation marks omitted).

DSCI fails to address any of the public interest factors, *see generally* Pl.'s Opp'n, ECF No. 13 at 1–5, let alone meet the

---

Grievance Board's jurisdiction. *See Irwin*, 448 F. Supp. 2d at 33 (explaining test for adequate alternative forum).

heavy burden of "showing that public-interest factors overwhelmingly disfavor" dismissal in this case. *Atl. Marine Constr.*, 571 U.S. at 67. KSA, on the other hand, argues that each factor favors dismissal. KSA argues that litigating the suit in the District of Columbia would cause substantial administrative difficulties because: (1) the vast majority of the witnesses are in Saudi Arabia; (2) the documents are in Arabic and kept in Saudi Arabia; and (3) Saudi Arabian law governs the contract. Mot. to Dismiss, ECF No. 10 at 21–23. Furthermore, according to KSA, Saudi Arabia has the predominant interest in litigating this dispute in its local court whereas, DSCI, a New Jersey corporation, has no connection to the District of Columbia forum. *Id.* Finally, KSA argues that applying Saudi Arabian law would significantly burden the Court, which would need to apply the law of a fundamentally different legal system, receive extensive translation of documents and witness testimony from a foreign language, and would need to take evidence from experts about the meaning and application of the foreign law. *Id.*

Because DSCI has failed to address the public interest factors, it has failed to meet its burden of showing that the factors "overwhelmingly disfavor dismissal." *See Atl. Marine Constr.*, 571 U.S. at 66; *see also Billard v. Angrick*, 220 F. Supp. 3d 132, 143 (D.D.C. 2016) ("[P]laintiff's silence on the

public interest factors is patently insufficient to satisfy [the] burden of showing that, on balance, the public interest factors '*overwhelmingly disfavor*' dismissal.") (emphasis in original) (citing *Atl. Marine Const.,* 571 U.S. at 66). DSCI has failed to meet its burden to show that this is the "unusual case" in which the forum-selection clause should not control. *See Atl. Marine Constr.*, 571 U.S. at 64. Accordingly, this case is dismissed pursuant to the doctrine of *forum non conveniens*.

**IV. The Court Need Not Reach the Issue of Subject-Matter Jurisdiction**

KSA, in a footnote, states that should this motion be denied, it anticipates filing a motion to dismiss for lack of subject-matter jurisdiction. Mot. to Dismiss, ECF No. 10 at 9 n.1. Although a federal court usually first addresses whether it has subject-matter jurisdiction, there are circumstances in which a district court appropriately first addresses a dispositive non-merits inquiry. *Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 584–85 (1999). One such circumstance is when a court decides the case on "a non-merits ground for dismissal" such as *forum non conveniens*. *Sinochem Int'l. Co. Ltd. v. Malaysia Int'l. Shipping Corp.*, 549 U.S. 422, 432 (2007). "A district court therefore may dispose of an action by a *forum non conveniens* dismissal, bypassing questions of subject-matter and

personal jurisdiction, when considerations of convenience, fairness, and judicial economy so warrant." *Id.*

KSA has urged the Court to consider the issue of *forum non conveniens* first, given that that this issue could dispose of the case. Def.'s Reply, ECF No. 14 at 6-7. For the reasons explained above, the Court agrees. Although there are questions about whether the Court has subject-matter jurisdiction over this action under the Foreign Sovereign Immunities Act, 28 U.S.C. § 1604, the Court has first considered defendant's *forum non conveniens* issue following the principle that "there is no unyielding jurisdictional hierarchy." *Second Amendment Foundation v. U.S. Conference of Mayors*, 274 F.3d 521, 523 (D.C. Cir. 2001) (quoting *Ruhrgas*, 526 U.S. at 578). The Court's conclusion that the case should be dismissed under the doctrine of *forum non conveniens* moots defendant's suggestion that the Court also lacks subject-matter jurisdiction, and the Court need not reach the latter issue. *See Roz Trading Ltd. v. Zeromax Group, Inc.*, 517 F. Supp. 2d 377, 389-90 (D.D.C. 2007) (stating dismissal on personal jurisdiction grounds mooted defendant's argument regarding subject-matter jurisdiction).

## V. CONCLUSION

For the foregoing reasons, KSA's motion to dismiss is **GRANTED**. An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed:     Emmet G. Sullivan**
**             United States District Judge**
**             August 21, 2018**